**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **GREGORY BOWE,** *et al.*, | **:** | |
| | **:** | **Case No. 2:22-cv-04266 (consolidated with** |
| | **:** | **1:22-cv-00723; 2:22-cv-04314; 2:22-cv 04315;** |
| | **:** | **1:22-cv-00721; 2:22-cv-04318; 3:22-cv-04310)** |
| | **:** | |
| **Plaintiffs,** | **:** | **Chief Judge Algenon L. Marbley** |
| | **:** | **Magistrate Judge Elizabeth P. Deavers** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **CROSS RIVER BANK,** *et al.*, | **:** | |
| | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

## OPINION & ORDER

The following matters are before the Court:

*Bowe et al. v. Cross River Bank et al.*, **Case No. 2:22-cv-04266:** Defendant Trivest Partners, L.P.'s Motion to Dismiss (ECF No. 8); Defendant Jayson Waller's Motion to Dismiss (ECF No. 17); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 20); Defendant Cross River Bank's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss Complaint (ECF No. 25); and Plaintiffs' Motion for Discovery (ECF No. 26).

*Evans et al. v. Cross River Bank et al.*, **Case No. 1:22-cv-00723:** Defendant Trivest Partners, L.P.'s Motion to Dismiss (ECF No. 8); Defendant Jayson Waller's Motion to Dismiss (ECF No. 17); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 20); Defendant Cross River Bank's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss Complaint (ECF No. 26); and Plaintiffs' Motion for Discovery (ECF No. 27).

*Salazar et al. v. Cross River Bank et al.*, **Case No. 2:22-cv-04314:** Defendant Trivest Partners, L.P. Motion to Dismiss (ECF No. 6); Defendant Jayson Waller's Motion to Dismiss (ECF No. 16); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 19); Defendant Cross River Bank's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss (ECF No. 24); and Plaintiffs' Motion for Discovery (ECF No. 25).

*Riley et al. v. Technology Credit Union et al.*, **Case No. 2:22-cv-04315:** Defendant Trivest Partners, L.P.'s Motion to Dismiss (ECF No. 7); Defendant Jayson Waller's Motion to

Dismiss (ECF No. 18); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 23); Plaintiffs' Motion for Discovery (ECF No. 28); and Defendant Technology Credit Union's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss (ECF No. 48).

***Stenger et al. v. Technology Credit Union et al.*, Case No. 1:22-cv-00721:** Defendant Trivest Partners, L.P.'s Motion to Dismiss (ECF No. 5); Defendant Jayson Waller's Motion to Dismiss (ECF No. 17); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 22); Plaintiffs' Motion for Discovery (ECF No. 27); and Defendant Technology Credit Union's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss (ECF No. 47).

***Chamberlin et al. v. Technology Credit Union et al.*, Case No. 2:22-cv-04318:** Defendant Trivest Partners, L.P.'s Motion to Dismiss (ECF No. 7); Defendant Jayson Waller's Motion to Dismiss (ECF No. 21); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 26); Plaintiffs' Motion for Discovery (ECF No. 31); and Defendant Technology Credit Union's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss (ECF No. 51).

***Genton et al. v. Technology Credit Union et al.*, Case No. 2:22-cv-04310:** Defendant Trivest Partners, L.P.'s Motion to Dismiss (ECF No. 5); Defendant Jayson Waller's Motion to Dismiss (ECF No. 16); Defendant Sunlight Financial, LLC's Motion to Compel Arbitration and Dismiss (ECF No. 21); Plaintiffs' Motion for Discovery (ECF No. 26); and Defendant Technology Credit Union's Motion for Joinder in Defendant Sunlight, Financial LLC's Motion to Compel Arbitration and Dismiss (ECF No. 46).

For all practical purposes, the motions are nearly identical. This Court thus considers each set of motions as consolidated motions and, as applicable, will reference the motions outlined in *Bowe et al. v. Cross River Bank et al.*, Case No. 2:22-cv-04266. Since Technology Credit Union is not a party in *Bowe*, however, this Court will, as applicable, reference Technology Credit Union's motions outlined in *Riley et al. v. Technology Credit Union et al.*, Case No. 2:22-cv-04315.

For the reasons set forth below, this Court **GRANTS** Defendant Trivest Partners, L.P.'s Motions to Dismiss; Defendant Jayson Waller's Motions to Dismiss; and Defendant Cross River Bank's and Defendant Technology Credit Union's Motions for Joinder in Defendant Sunlight Financial, LLC's Motions to Compel Arbitration and Dismiss. Additionally, this Court **SEVERS** all claims against Sunlight Financial, LLC from this action. As a result, this Court **GRANTS IN**

**PART** Defendant Sunlight Financial, LLC's Motions to Compel Arbitration and Dismiss, such that the motions are **GRANTED** as to Defendant Cross River Bank and Defendant Technology Credit Union but **STAYED** Defendant Sunlight Financial, LLC's Motions to Compel Arbitration and Dismiss as to Defendant Sunlight.[1] Finally, this Court **DENIES** Plaintiffs' Motions for Discovery.

## I.    BACKGROUND

### A.  Factual Background

The complaints filed by Plaintiffs in each of these seven cases are substantially similar, as are the facts and allegations contained therein. As such, this Court issued an order consolidating the cases *sua sponte.* (*Bowe*, ECF No. 38). This Court thus recites the common facts of this case as Plaintiffs allege them across the consolidated cases, specifying the facts on a party-specific basis where necessary.

These consolidated cases stem from a purported business operation that allegedly used false promises, deceptive advertisement, and pressured sales tactics to sell customers overpriced and defective residential solar panel systems.[2] Plaintiffs are Gregory and Rebekah Bowe (Case No. 2:22-cv-04266, hereinafter "*Bowe*"); Deanna and Christopher Evans (Case No. 1:22-cv-00723, hereinafter "*Evans*"); Stephen and Mallori Salazar (Case No. 2:22-cv-04314, hereinafter "*Salazar*"); John and Mary Riley (Case No. 2:22-cv-04315, hereinafter "*Riley*"); Bree-Ann and Brian Stenger (Case No. 1:22-cv-00721, hereinafter "*Stenger*"); Thomas and Amanda Chamberlin (Case No. 2:22-cv-04318, hereinafter "*Chamberlin*"); and Nathan and Tiffany Genton (Case No.

---

[1] As this Court is granting Cross River's and TCU's motions to join Sunlight's motions to compel arbitration, this Court treats Sunlight's motions to compel arbitration as being brought by each of the three Defendants. Hence, this order reflects that the motions to compel arbitration are partially granted and partially stayed.

[2] This Court recognizes that there are similar cases pending in the Northern District of Ohio, Southern District of Ohio, and Eastern District of Michigan.

2:22-cv-04310, hereinafter "*Genton*"). The *Bowe*, *Evans*, and *Salazar* Plaintiffs sued Defendants Cross River Bank (hereinafter "Cross River"), Sunlight Financial, LLC (hereinafter "Sunlight"), Jayson Waller (hereinafter "Waller"), and Trivest Partners, L.P (hereinafter "Trivest"). The *Riley*, *Stenger*, *Chamberlin*, and *Genton* Plaintiffs also sued Sunlight, Waller, and Trivest, but sued Defendant Technology Credit Union (hereinafter "TCU") rather than Cross River.[3]

To provide context on the Defendants, Cross River and TCU are credit unions who, along with Sunlight, provided loans to Plaintiffs for the purchase of the solar panel system from the now defunct solar panel company, Power Home Solar, LLC (d/b/a Pink Energy) (hereinafter "Pink Energy"). (*Bowe*, ECF No. 1 ¶¶ 2-5). Trivest is a private equity company that invested in Pink Energy. (*Id*. ¶ 6). Waller was a corporate officer of Pink Energy. (*Id*. ¶ 8). Plaintiffs allege Trivest and/or Waller worked with Pink Energy to solicit, sell, install, and maintain solar power energy systems designed for residential use. (*Id*. ¶¶ 2, 6). Plaintiffs also allege Cross River and TCU acted by and through Sunlight to provide financing to the Plaintiffs in the purchase of the Pink Energy solar panel system. (*Id*. ¶¶ 4, 5). In 2018, Trivest, through Waller, purchased a 25% ownership interest in Pink Energy and became involved in the day-to-day operation of Pink Energy. (*Id*. ¶¶ 40, 41, 43). On October 7, 2022, Pink Energy filed for bankruptcy and, as such, has not been added as a party to these lawsuits. (*Id*. ¶ 3). Plaintiffs, however, refer to Defendants collectively as the "Pink Energy Group" through their complaints. (*Id*. ¶ 8).[4]

---

[3] These cases are related to a group of consolidated cases before this Court under *Hutzell et al. v. Power Home Solar, LLC et al.*, Case No. 2:22-cv-02930 (S.D. Ohio) (hereinafter "*Power Home Solar* cases"). In the *Power Home Solar* cases, Defendants Power Home Solar, LLC (d/b/a/ Pink Energy), Goodleap, LLC, Waller, and Trivest were sued. Similar motions to dismiss and compel arbitration were filed in the *Power Home Solar* cases. On August 2, 2023, this Court issued an Order granting Waller's Motions to Dismiss; GoodLeap, LLC's Motion to Dismiss and Compel Arbitration; and Trivest's Motions to Dismiss. (*Hutzell*, ECF No. 128). The Court denied as moot Plaintiffs' Motion for Limited Discovery. (*Id*.).

[4] Jurisdiction is conferred on this Court under 28 U.S.C. § 1332(a), diversity of citizenship, because Cross River is a resident of New Jersey, TCU is a resident of California, Sunlight is a resident of Delaware, Trivest is a resident of Florida, Waller is a resident to North Carolina, and Plaintiffs are residents of Ohio—and the amount in controversy is more than $75,000. (*Bowe*, ECF No. 1 ¶ 9).

Plaintiffs allege the following regarding how they became involved with the Pink Energy Group. Between 2019 and 2021, Plaintiffs initiated a search for vendors equipped to install solar equipment in their homes. (*Id*. ¶ 12). During this time, the Pink Energy Group advertised to the public that their solar equipment was of marketable quality and efficiency. (*Id*. ¶ 13). In reliance upon the veracity of the Pink Energy Group's representations, Plaintiffs contacted Pink Energy to purchase solar equipment. (*Id*. ¶ 15). Soon thereafter, an agent/employee of Pink Energy and/or Sunlight, Cross River, TCU, Trivest, and/or Waller scheduled appointments to meet each of the Plaintiffs at their residences. (*Id*. ¶ 65). The agent/employee represented to each set of Plaintiffs that they would experience a significant reduction in their electrical bill and additional savings from federal and/or state tax credits once they installed the Pink Energy solar equipment into their homes. (*Id*. ¶ 17).

The process for onboarding customers, including Plaintiffs, allegedly went as follows. The sales representative for the Pink Energy Group induced sales by representing to Plaintiffs that their purchases would entitle them to tax credits, but that those incentives might only be available if Plaintiffs signed up that day. (*Id*. ¶ 48). The salesperson would then produce an electronic copy of the Sales Agreement on his or her tablet for the Plaintiffs to review. (*Id*. ¶ 49). The salesperson, however, would scroll through the provisions of the Sales Agreement "at a rapid and unacceptable pace" while providing to each set of Plaintiffs an "erroneous interpretation" of the Sales Agreement's content. (*Id*. ¶ 51). Plaintiffs would then sign the Sales Agreement via an electronic signature program, like DocuSign, which auto-filled Plaintiffs' initials after each paragraph. (*Id*. ¶ 52). The salesperson would never discuss the restrictive clauses contained in the Sales Agreement, including an arbitration clause. (*Id*. ¶ 53). The salesperson then confirmed financing for the sale of the solar equipment through one or more financial institutions chosen exclusively by the Pink

5

Energy Group. (*Id*. ¶¶ 55, 56). Plaintiffs were not provided an option of securing financing from outside the Pink Energy Group. (*Id*. ¶ 57). The salesperson then presented a copy of the Loan Agreement between Plaintiffs and Cross River, TCU, and/or Sunlight in the same problematic manner as he or she presented the Sales Agreement. (*Id*. ¶¶ 58-62).

Once the Sales and Loan Agreements were signed, the Pink Energy Group hired one or more installation crews to install the solar systems in Plaintiffs' homes. (*Id*. ¶¶ 65-68). Plaintiffs allege the installation was done in a substandard manner and resulted in damage to their properties. (*Id*. ¶ 71). Additionally, although the Pink Energy Group represented to Plaintiffs that the solar panel equipment was completely installed, Plaintiffs claim the systems were never fully or consistently activated. (*Id*. ¶ 74). As such, Plaintiffs allege the systems failed to produce the kilowatt hours for which Plaintiffs contracted, which resulted in financial damage to the Plaintiffs. (*Id.* ¶¶ 75-81). Specifically, Plaintiffs claim their electric bills have remained largely unchanged since the activation of their solar systems, and they are now having to pay both their electric bill and their loan payment for the installation of the solar system. (*Id*. ¶ 80). Despite Plaintiffs' outreach, Plaintiffs claim Defendants and Pink Energy have failed to fix the issues with Plaintiffs' solar systems and stopped responding to Plaintiffs' calls for customer support. (*Id*. ¶ 82).

## B. Procedural Background

### 1. *Eastern District of Michigan Case*

Before turning to the procedural history in these consolidated cases, this Court considers the procedural history of a related case that began close in time. On November 13, 2022, plaintiffs in *Hall et al. v. Trivest Partners L.P. et al.* (Case No. 4:22-cv-12743) (hereinafter "*Hall*") filed a nationwide class action lawsuit in the Eastern District of Michigan. (*Bowe*, ECF No. 8 at PageID 117). The *Hall* complaint arose from the same purported business operation that allegedly used

false promises, deceptive advertisement, and pressured sales tactics to sell customers Pink Energy's overpriced and defective home solar panel systems. (*Id.*).

The three defendants in *Hall* are Trivest, Waller, and TGIF Power Home Investor, LLC (later known as Pink Energy). (*Bowe*, ECF No. 10 at PageID 151). The plaintiffs in *Hall* allege three causes of action: Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §§ 1962(a) and (c); Conspiracy to Violate RICO, in violation of 18 U.S.C. § 1962(d); and violations of the Michigan Consumer Protections Act. (*Id.*).

The putative class in *Hall*, which the court has not yet certified, includes: "[a]ll persons in the United States who purchased a home solar system from Power Home Solar, LLC (including d/b/a/ Pink Energy) at any time since January 1, 2018." (*Bowe*, ECF No. 8 at PageID 118).

### 2.   These Consolidated Cases

Plaintiffs filed their complaints in these consolidated cases on December 7, 2022, approximately one month after the complaint in *Hall* was filed. (*Bowe*, ECF No. 1). Plaintiffs' complaints bring forth thirteen claims against Defendants, which include:

- Count 1: Breach of Contract (against all Defendants);
- Count 2: Fraudulent Misrepresentation (against all Defendants);
- Count 3: Negligent Misrepresentation (against all Defendants);
- Count 4: Fraud in the Inducement/Execution (against all Defendants);
- Count 5: Declaratory Judgment to Void the Undisclosed Arbitration and Limitation of Liability Clauses in the Sales Agreement;
- Count 6: Declaratory Judgment to Void the Undisclosed Arbitration and Limitation of Liability Clauses in the Loan Agreement;
- Count 7: Negligent Selection/Retention and Training (against all Defendants);
- Count 8: Breach of Warranty (against Defendants Cross River/TCU, Sunlight, and Trivest);
- Count 9: Violations of the Ohio Consumer Protection Act[5] (against Defendants Cross River/TCU, Sunlight, and Trivest);
- Count 10: Civil Conspiracy (against all Defendants);

---

[5] Although Plaintiffs refer to the "Ohio Consumer Protection Act," there is no such legislation. This Court proceeds with the understanding that Plaintiffs intended to bring this claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 *et seq.*

- Count 11: Negligence (against all Defendants);
- Count 12: Declaratory Judgment to disregard Power Home Solar's limited liability protection form and hold Defendant Waller Personally Liable for any and all damages associated with his formulation, direction, and control over Pink Energy's fraudulent sales and marketing practices; and
- Count 13: Punitive Damages (against all Defendants)

(*Id*.). Generally speaking, the Plaintiffs in these consolidated cases make the following allegations: the Pink Energy Group's representations were false, fraudulent, misleading, scientifically inaccurate, scientifically impossible to obtain, contrary to law, and exaggerated beyond mere puffery (*Id*. ¶ 14); the Pink Energy Group sold its solar equipment to customers at a high markup price (*Id*. ¶ 20); the Pink Energy Group directed and trained its employees to engage in high-pressure "hard-sell tactics" such as representing to customers that the tax credits were time-sensitive and making other inaccurate promises to encourage customers to sign their contracts quickly and with minimal review (*Id*. ¶¶ 24, 47, 48); and Defendant Waller was intimately involved in the Pink Energy Group's sales practices and developed all or most of the sales techniques and scripts used by the Pink Energy Group (*Id*. ¶¶ 25, 26).

After Plaintiffs filed their complaints, Trivest and Waller filed Motions to Dismiss in all cases; Sunlight filed Motions to Compel Arbitration and Dismiss in all cases; Cross River filed Motions to Join Sunlight's Motions to Compel Arbitration and Dismiss in *Bowe*, *Evans*, and *Salazar*; TCU filed Motions to Join Sunlight's Motions to Compel Arbitration and Dismiss in *Riley*, *Stenger*, *Chamberlin*, and *Genton*; and Plaintiffs filed Motions for Discovery in all cases requesting to conduct limited discovery on whether the arbitration provision at issue is enforceable. Plaintiffs filed responses in opposition to the various motions to dismiss and motions to compel arbitration. Plaintiffs, however, did not oppose Cross River's or TCU's motions to join Sunlight's motions. Defendants filed responses in opposition to Plaintiffs' motions for limited discovery. The motions are now ripe for this Court's consideration. It is important to note, however, that on

8

November 3, 2023, Sunlight filed notice with this Court that Sunlight Financial Holdings, Inc. and its debtor affiliates, including Sunlight, commenced bankruptcy proceedings on October 30, 2023. (*Bowe*, ECF No. 39).

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

A court may dismiss a case under Rule 12(b)(2) of the Federal Rules of Civil Procedure based on lack of jurisdiction over the subject matter. *See generally* Fed. R. Civ. P. 12(b)(2). When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citation omitted). Making such a showing nonetheless requires the plaintiff to "establish[] with reasonable particularity sufficient contacts between [defendant] and the forum state." *Id*. (citation omitted). When ruling on a motion to dismiss for lack of jurisdiction, "the court will not consider facts proffered by the defendant that conflict with those by the plaintiff, and will construe the facts in the light most favorable to the nonmoving party." *Id*. (citation omitted).

### B.  Motion to Dismiss for Failure to State a Claim

A court may also dismiss a case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. *See generally* Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). On a motion to dismiss for failure to state a claim, the court must "construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations

that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). If more than one inference may be drawn from an allegation, then the court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court, therefore, cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

Although the standard for analyzing a Rule 12(b)(6) motion is liberal, the plaintiff is required to plead more than bare assertions of legal conclusions. *Bredesen*, 500 F.3d at 527 (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (internal quotation marks and citation omitted). Indeed, the court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply put, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*.

### C. Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, then the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of the arbitration agreement. 9 U.S.C. § 4.

In considering a motion to compel arbitration, the court must determine: (1) whether the parties agreed to arbitrate; and if agreement, (2) the scope of that agreement. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). If the court is satisfied that the agreement to arbitrate is not "in issue," then it must compel arbitration. 9 U.S.C. § 4; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). If the validity of the arbitration agreement is "in issue," however, then the court must proceed to a trial to resolve the question. 9 U.S.C. § 4.

In order to show that the validity of an arbitration agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, which mirrors the standard required to withstand summary judgment in a civil suit. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citations omitted). The court is instructed, though, to examine the language of the contract "in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsbuishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Accordingly, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id*.

### III.   LAW & ANALYSIS

### A.  Trivest's Motions to Dismiss

This Court first considers Trivest's motions to dismiss, which argue that Trivest should be dismissed from this lawsuit because the first to file rule applies, the Court lacks personal jurisdiction over Trivest, and Plaintiffs fail to state a claim against Trivest.

*1. First-to-File Rule*

The Sixth Circuit has defined the first-to-file rule as "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). Put simply, the rule provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Id.* (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 551 (6th Cir. 2007)).

Courts generally evaluate three factors to determine whether the first-to-file rule applies: (1) the chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake. *Id.* (citation omitted). If these three factors support application of the first-to-file rule, the court must also determine whether any equitable considerations, such as evidence of "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping," merit not applying the first-to-file rule in a particular case. *Id.* (citation omitted).

If a court finds the first-to-file rule applies, then the court presiding over the second-filed case has four options: (1) dismiss the case without prejudice; (2) transfer the second-filed case to the district in which the first-filed case is pending; (3) stay proceedings in the second-filed case while the first filed court decides whether to retain or relinquish jurisdiction; or (4) proceed without interruption. *Peters v. Inmate Servs. Corp.*, No. 1:17-cv-1660, 2018 WL 9869732, at *2 (N.D. Ohio Jan. 11, 2018).

Trivest argues that this Court should dismiss the complaints under the first-to-file rule because *Hall* was filed in the Eastern District of Michigan before these consolidated cases were filed and the resolution of *Hall* could resolve these consolidated cases. Plaintiffs respond that the

12

first-to-file rule is inapplicable here because *Hall* concerns substantially different claims and parties from these consolidated cases.

First, when evaluating the chronology of events, this Court finds *Hall* predates these consolidated cases. Specifically, *Hall* was filed on November 13, 2022, while the complaints in these consolidated cases were filed on December 7, 2022. (*Bowe*, ECF No. 8 at PageID 117-118). Accordingly, this factor weighs in favor of application of the first-to-file rule.

Second, when evaluating the similarity of the parties involved, this Court finds the parties involved do not substantially overlap. While the definition of the putative class in *Hall* is broad enough to include Plaintiffs and *Hall* defendants include Trivest and Waller,[6] *Hall* does not include Defendants Sunlight, Cross River, and TCU who are parties in these consolidated cases. While the first-to-file rule applies when the parties in the two actions "substantially overlap, even if they are not perfectly identical," *Baatz*, 814 F.3d at 790, this Court finds *Hall* not including Sunlight, Cross River, and TCU as defendants makes it such that the parties do not substantially overlap. Accordingly, this factor weighs against application of the first-to-file rule.

Third, when evaluating the similarity of the issues or claims at stake, this Court finds the cases do not substantially overlap. The Sixth Circuit has confirmed "[t]he issues need not be identical, but they must be materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id*. at 791. While *Hall* concerns the same scheme to defraud customers in purchasing faulty residential solar panel systems from Pink Energy, none of the thirteen causes of action in these consolidated cases is pled in *Hall*. Rather, *Hall* alleges RICO violations and violations of the Michigan Consumer Sales Practices

---

[6] In *Baatz*, the Sixth Circuit held the fact that a class action has not yet been certified does not impact the similarity of the parties involved. 814 F.3d at 790-91.

Act. Since the actions do not raise the same claims arising under the same laws, this factor weighs against application of the first-to-file rule.

Overall, when evaluating the three factors of the first-to-file rule, this Court does not find it appropriate to dismiss or stay these consolidated cases based on *Hall*. Accordingly, Trivest's motions to dismiss based on the first-to-file rule are **DENIED**.

### 2. *Personal Jurisdiction*

This Court next turns to Trivest's argument that this Court lacks personal jurisdiction over it. Two types of personal jurisdiction exist for corporations: (1) general jurisdiction and (2) specific jurisdiction. *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 398 (6th Cir. 2021). A court may assert general jurisdiction over a defendant corporation "in its home State, where the defendant is incorporated or headquartered." *Id*. (internal quotation marks and citation omitted). Alternatively, a court may exercise specific jurisdiction over a defendant corporation if the plaintiff's claims arise out of or relate to the defendant's activities in the forum state. *Id*. For specific jurisdiction to attach, a court must find "a connection between the forum and the specific claims at issue." *Id*. (citation omitted).

Trivest argues that this Court lacks general jurisdiction because Trivest is neither incorporated in Ohio nor maintains its principal place of business in Ohio. Additionally, Trivest argues that this Court lacks specific jurisdiction because Plaintiffs fail to allege any plausible factual allegations connecting it to Ohio in any meaningful way, nor do Plaintiffs accuse it of having conducted activities in Ohio that proximately caused Plaintiffs' injuries. Plaintiffs respond that there is personal jurisdiction over Trivest because Trivest was a 25% shareholder of Pink Energy and was intimately involved in designing and facilitating the sale of the faulty solar panel systems to Plaintiffs in Ohio.

Since Trivest is based in Florida and not Ohio, this Court finds it does not have general jurisdiction over Trivest. Additionally, this Court finds there is not a sufficient connection between Ohio and the specific claims against Trivest for specific jurisdiction to attach. To explain, Plaintiffs claim in a conclusory manner that Trivest was acting in concert with Pink Energy and the other Defendants. In this Court's view, Plaintiffs' allegations that could be read as connecting Trivest to on-the-ground activities in Ohio are that (1) "Trivest … undertook all or a portion of Pink Energy's hiring and talent recruitment responsibilities" which "included placing job postings on behalf of Pink Energy for positions ranging from call center employees to master electricians," and (2) "an installation crew and/or a sub-contractor crew hired/retained by the Pink Energy Group as their agents and/or employees, arrived at Plaintiffs' residence and commenced the installation of the solar panel system." (*Bowe*, ECF No. 1 ¶¶ 45-46, 66-67). Even interpreted in a light most favorable to Plaintiff, it is not clear that Trivest recruited or hired anyone in Ohio, let alone supervised them, as this Court is without allegations or proof that the sales personnel who visited Plaintiffs at their homes in Ohio were employees of Trivest or that they were directed by Trivest to conduct the sales in the problematic manner that Plaintiffs allege. *See, e.g.*, *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, at 1077, 1077 n.9 (S.D. Ohio 2022) (collecting cases). While this Court refrains from a sweeping generalization that a minority share and day-to-day operational involvement can never be enough to establish specific jurisdiction, this Court finds Plaintiffs' allegations insufficient. For this reason, Trivest's motions to dismiss are **GRANTED**.

### 3. Failure to State a Claim – Individual Liability

Despite finding this Court lacks personal jurisdiction over Trivest, this Court will analyze Trivest's motion to dismiss for failure to state a claim. First, Trivest alleges Plaintiffs fail to establish its individual liability. Indeed, one reason corporations incorporate is "the ability to limit

the liability of the individual shareholders." *Minno v. Pro-Fab, Inc.*, 121 Ohio St. 3d 464, ¶ 7, 2009-Ohio-1247, 905 N.E.2d 613, 616 (Ohio 2009) (citations omitted). In certain circumstances, however, "the corporate form may be disregarded, and the corporate veil pierced, for the purpose of reaching the assets of the corporation's individual shareholders." *Id*. ¶ 8. Piercing the corporate veil is defined as the "judicial act of imposing personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts." *Id*. (internal quotation marks and citation omitted).

To determine whether an individual shareholder may be held liable for a corporation's misdeeds, the Supreme Court of Ohio applies the *Belvedere* test. *Id*. ¶ 9. Under the *Belvedere* test, the corporate veil may be pierced when: (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *In re Moldovan*, 636 B.R. 491, 498 (S.D. Ohio 2021) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289, 1993-Ohio-119, 617 N.E.2d 1075, 1086 (Ohio 1993)).

Aside from piercing the corporate veil, a shareholder can be held liable for a corporation's misdeeds under the agency theory of liability. The hallmark of an agency relationship "is the right of a principal to control the conduct of an agent when the agent is performing work for it." *Sophia's Cure Inc. v. AveXis, Inc.*, No. 2:16-CV-865, 2017 WL 4541449, at *6 (S.D. Ohio Oct. 10, 2017). Ohio law indicates that a complaint relying on an agency theory of liability "must plead facts

which, if proved, could establish the existence of an agency relationship." *Id*. (internal quotation marks omitted).

Trivest argues that all of Plaintiffs' claims fail to state an offense because the complaint attributes actions of other parties to Trivest. Plaintiffs respond that Trivest is liable for its independent conduct in falsely representing the nature and quality of the solar panel system to Plaintiffs, hiring and training employees and agents to use hard-sell tactics to sell defective solar panel systems, and installing the solar panel systems improperly.

This Court finds Plaintiffs fail to pierce the corporate veil or establish an agency theory of liability with respect to Trivest. Although Plaintiffs characterize Trivest as a "control-based" private equity investor, Trivest held only a 25% stake in Pink Energy. Having only a one-quarter stake in the company assumes that Trivest did not maintain a level of control over Pink Energy such that Pink Energy was indistinguishable from Trivest. Indeed, as mentioned *supra*, Section III(A)(2), Plaintiffs' allegations against Trivest relate to *Pink Energy's* hiring practices, marketing strategy, and sales tactics, and Plaintiffs do not allege that Trivest *itself* contracted with or had any interaction with Plaintiffs or that Trivest had an employment relationship with the sales personnel who sold Plaintiffs the systems or the crews who installed the systems. In short, Plaintiffs' claims seek to render Trivest liable for Pink Energy's alleged misdeeds for the mere reason that Trivest was an active shareholder, which is improper. For these reasons, Plaintiffs fail to state a valid claim against Trivest.

#### 4. *Failure to State a Claim – Specific Causes of Action*

Trivest also argues that Plaintiffs fail sufficiently to plead specific causes of action against it. Plaintiffs respond that they do.[7] This Court will address each cause of action in turn.

#### a. *Breach of Contract and Breach of Warranty*

Under Ohio law, a plaintiff states a claim for breach of contract when there is: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (applying Ohio law); *Logsdon v. Ohio N. Univ.*, 68 Ohio App. 3d 190, 587 N.E.2d 942, 946 (Ohio Ct. App. 1990)). Importantly, to succeed on a breach of contact claim, the plaintiff must show that the defendant was a party to the contract. *Jackson v. Sunnyside Toyota, Inc.*, 887 N.3.2d 370, 376 (Ohio Ct. App. 2008).

Trivest argues it cannot be liable for breach of contract or breach of warranty because it was not a party to the Sales or Loan Agreements. Rather, Plaintiffs entered into those agreements with Pink Energy, Sunlight, and Cross River/TCU. (*See Bowe*, ECF Nos. 1-1, 1-2). Plaintiffs respond that because their complaint alleges the Pink Energy Group, which includes Trivest, entered into agreements with Plaintiffs and breached those agreements, that is enough to survive a motion to dismiss. This Court disagrees. Plaintiffs' own characterization of Defendants as "the Pink Energy Group" cannot overcome the fact that Trivest is not a party to the Sales and Loan Agreements in these cases. Accordingly, this Court finds Plaintiffs fail to state a valid claim for breach of contract and breach of warranty against Trivest.

---

[7] Plaintiffs include a section in their brief on the statute of limitations for Plaintiffs' Consumer Sales Practices Act Violation Claim. (ECF No. 10 at PageID 146-147). Trivest, however, does not make any statute of limitation arguments. Therefore, this Court does not address this section of Plaintiff's brief.

###### b. *Fraudulent Misrepresentation and Fraud in the Inducement/Execution*

Under Ohio law, the elements for a claim of fraudulent misrepresentation include: (1) an actual or implied misrepresentation; (2) which is material to the transaction; (3) made with knowledge that the statement is false; (4) with the intent to mislead another; (5) who relies on the misrepresentation; and (6) with resulting injury. *Horejs v. Kitchin*, No. 22-4009, 2023 WL 4044582, at *5 (6th Cir. June 16, 2023) (citing *Southworth v. Weigand*, 2002-Ohio-4584, No. 80561, 2002 WL 2027523, at *3 (Ohio Ct. App. Sep. 5, 2002); *Hubbard Fam. Trust v. TNT Land Holdings, LLC*, 9 N.E.3d 411, 421 (Ohio Ct. App. 2014)).

Also under the law of Ohio, a claim of fraud in the inducement arises when "a party is induced to enter into an agreement through fraud or misrepresentation." *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 775 (S.D. Ohio 2016) (citing *Am. Coal Sales Co. v. Nova Scotia Power Inc.*, No. 2:06-cv-94, 2009 WL 467576, at *24 (S.D. Ohio Feb. 23, 2009) (citing Ohio law). To prove fraudulent inducement, a plaintiff must demonstrate the same elements necessary to prove a traditional action for fraud. *Id.* (citing *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (citing Ohio law)).

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to plead "with particularity" the circumstances constituting fraud or mistake. *See generally* Fed. R. Civ. P. 9(b). To satisfy the particularity requirement of Rule 9(b), a plaintiff "at a minimum, must 'allege the time, place, and content of the alleged misrepresentations on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States ex rel. Marlar v. BWXT Y–12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

Trivest alleges Plaintiffs have not pled with particularity their fraud-based claims against it. Plaintiffs respond that their complaints meet the requirements of Rule 9(b) because they allege Trivest and the other Defendants worked together to design and publish false and misleading claims about their solar panel systems and Plaintiffs relied on Defendants' claims to their detriment, since they purchased the solar panel systems that ultimately did not provide the benefits Defendants promised.

This Court finds Plaintiffs do not satisfy Rule 9(b)'s particularity requirement with respect to the fraud-based claims against Trivest. Plaintiffs do not identify any specific communications between Plaintiffs and Trivest. Rather, all of Plaintiffs' fraud-based claims involve misrepresentations made by "the Pink Energy Group." Again, while Plaintiffs include Trivest in their reference to Defendants as "the Pink Energy Group," this Court does not find that is enough to satisfy Plaintiffs' burden. Accordingly, this Court finds Plaintiffs fail to state a valid claim for fraudulent misrepresentation and fraud in the inducement/execution against Trivest.

### c. Negligent Selection/Retention and Training

To establish a negligent hiring and/or retention claim under Ohio law, the plaintiff must demonstrate: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of the plaintiff's injuries. *Plotner v. Swanton Local. Bd. of Educ.*, 85 F. Supp. 2d 747, 755 (N.D. Ohio 2000) (citing Ohio law).

Trivest argues there was not an employment relationship between Trivest and Pink Energy since Trivest was a minority investor in Pink Energy and not a direct employer of Pink Energy employees. Plaintiffs respond that they adequately pled an employment relationship since they

allege the Pink Energy Group, which includes Trivest, negligently hired and trained employees to use hard-sell and deceptive practices that induced Plaintiffs to buy faulty solar panel systems.

This Court, again, finds Plaintiffs' reference to "the Pink Energy Group" is not enough to satisfy its burden of showing an employment relationship. Plaintiffs do not allege which Defendant hired the sales personnel who visited Plaintiffs at their homes and sold them their solar systems. Plaintiffs' complaints merely allege that the sales personnel were employees or agents of Pink Energy "and/*or*" every other Defendant in these cases. Accordingly, this Court finds Plaintiffs fail to state a valid claim for negligent selection/retention and training against Trivest.

### d. *Civil Conspiracy*

Under Ohio law, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 629 N.E.2d 28, 33 (1993) (quotation marks omitted)). For the malicious combination element, while a plaintiff does not need to demonstrate an explicit agreement, the plaintiff must still demonstrate an understanding or common design between the parties to commit an improper act. *Id.* (citing *Gosden v. Louis*, 116 Ohio App. 3d 195, 687 N.E.2d 481, 496 (1996)).

Trivest argues Plaintiffs fail to plead there was any agreement between Defendants to commit their alleged bad acts. Rather, Trivest argues Plaintiffs merely allege Trivest was "aware of" the misconduct being undertaken by the other Defendants. (*See Bowe*, ECF No. 1 ¶¶ 182, 197, 209, 226). Plaintiffs respond that they plead sufficient facts for civil conspiracy because they allege the Defendants, including Trivest, "conspired together to facilitate the sale of the solar systems." (*See id.* ¶ 190).

21

This Court finds Plaintiffs' conclusory statement that Defendants conspired together does not meet their burden of demonstrating an understanding or common design between Trivest and the other Defendants to commit an improper act. Accordingly, this Court finds Plaintiffs fail to state a valid claim for civil conspiracy against Trivest.

*e. Negligence*

Trivest argues the economic loss rule bars Plaintiffs' negligence claim. Under Ohio law, the economic loss rule "generally prevents recovery in tort of damages for purely economic loss." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (citing *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 835 N.E.2d 701, 704 (Ohio 2005)). The economic loss rule only applies "when economic loss is unaccompanied by personal injury or property damage." *Id.* (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 537 N.E.2d 624, 629-30 (Ohio 1989)).

Plaintiffs respond that the economic loss rule does not apply here because Plaintiffs assert in their complaints that "the installation crew, under the direction of the crew leader, commenced installation, resulting in substandard workmanship and *property damage*." (*Bowe*, ECF No. 1 ¶ 71) (emphasis added). Plaintiffs, however, do not allege Trivest *itself* had any part in the installation of the solar systems. Rather, Plaintiffs allege installation crews hired/retained by "the Pink Energy Group" caused damage to Plaintiffs' property while installing the solar panel systems. (*Id.* ¶¶ 66, 207). While Plaintiffs include Trivest in its definition of "the Pink Energy Group," this Court, as before, finds that is not enough to show Trivest itself owed Plaintiffs an independent tort duty or that Trivet's negligence itself caused Plaintiffs' property damage. Accordingly, this Court finds the economic loss rule bars Plaintiffs' negligence claim against Trivest.

### B. Waller's Motions to Dismiss

This Court next turns to Waller's motions to dismiss, which argue Waller should be dismissed from this lawsuit because Plaintiffs fail to establish his personal liability and fail to adequately plead their fraud and negligence-based claims against him.

#### 1. Personal Liability

Under Ohio law, a corporate officer may not normally be held personally liable for the acts of a corporate entity or merely by virtue of his status as a corporate officer. *State ex rel. DeWine v. Osborne Co.*, 2018-Ohio-3109, 104 N.E.3d 843, 856-57 (Ohio Ct. App. 2018). A corporate officer can, however, be held liable under the personal participation theory or the alter ego doctrine. *Id*.

Under the personal participation theory, a corporate officer may be held personally liable for "tortious acts he or she has [personally] committed." *Id*. at 857. Under such circumstances, "a plaintiff need not pierce the corporate veil to hold individuals liable who have personally committed such acts." *Id*. The evidence, however, "must indicate that the officer specifically directed the particular act to be done or that the officer participated or cooperated therein." *Id*.

The alter ego doctrine applies where a corporation is simply the alter ego of the corporate officer sought to be held liable. *Id*. at 856-57. In such instances, "the corporation is so dominated by the shareholder that it has no separate mind, will, or existence of its own, and that injury or unjust loss resulted from the shareholder's control of the corporation." *Belvedere*, 67 Ohio St. 3d at 288.

Waller argues that he should be dismissed from this lawsuit because Plaintiffs never allege that he was directly involved in the events that caused their injuries and, even if they had, he is not personally liable for Pink Energy's actions because he was a mere corporate officer. Plaintiffs

respond that they adequately pled Waller's liability because they allege he was intimately involved in the day-to-day operations of Pink Energy, designed and taught the sales tactics that were used to defraud Plaintiffs, and had control over Pink Energy.

This Court finds Plaintiffs fail to make any allegations which, if proven, would render Waller personally liable for their alleged injuries. Most of Plaintiffs' allegations are directed at the "Pink Energy Group" rather than Waller specifically. The specific allegations against Waller are limited to the following: Waller was "intimately involved in designing, implementing, and teaching the fraudulent sales practices employed by Pink Energy's Agents/Employees" (*Bowe*, ECF No. 1 ¶ 25); "Upon information and belief, all or most of the sales techniques/scripts were developed by Defendant Waller" (*Id*. ¶ 26); "Upon information and belief, from 2017-2018, Defendant Waller attended all or substantially all of the Pink Energy's sales meetings and routinely encouraged the company's sales representatives to engage in hard-sell tactics" (*Id*. ¶ 27); and "Sometime after 2018, Defendant Waller began to attend meetings at Pink Energy's offices throughout the country . . . and continually pushed sales agents to engage in hard-sell tactics" (*Id*. ¶ 28).[8]

These allegations against Waller pertain to his level of influence over Pink Energy's day-to-day operations and tactics. None of them suggests that Waller *himself* interacted with Plaintiffs, or even that Waller directed the sales personnel who visited Plaintiffs at their homes to utilize the hard-sell tactics that he allegedly developed. Further, Plaintiffs make no allegations indicating Waller exercised complete or near-complete dominion over Pink Energy to the extent that Pink Energy lacked any effective autonomy. In fact, Plaintiffs' allegations that Defendant Waller

---

[8] Plaintiffs dedicate several paragraphs to discussing Waller's alleged conduct at another company, which was subject to state enforcement actions related to deceptive sales techniques. (*Id*. ¶¶ 31-37). Plaintiffs' allegations that Waller was implicated in problematic activity concerning another company have no relevance to the consideration of his personal involvement in these consolidated cases.

worked in concert with Trivest, an active shareholder with 25% ownership of the company, weigh against such a conclusion. In short, there are no allegations that Pink Energy is indistinguishable from Waller himself. As such, this Court finds Plaintiffs fail to plead Waller's personal liability. For that reason, Waller's motions to dismiss are **GRANTED**.

### 2. Specific Causes of Action

Despite finding Plaintiffs fail to plead Waller's personal liability, this Court will analyze Waller's argument that Plaintiffs fail to plead adequate specific causes of action against him. This Court will address each cause of action in turn.

### a. Fraud-Based Claims

As analyzed *supra*, Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff to plead "with particularity" the circumstances constituting fraud or mistake. *See generally* Fed. R. Civ. P. 9(b). Similar with Trivest, this Court finds Plaintiffs do not satisfy Rule 9(b)'s particularity requirement with respect to Waller. Plaintiffs do not allege Waller personally met with the Plaintiffs nor do Plaintiffs identify any specific communications between Plaintiffs and Waller. *See BWXT Y–12 LLC*, 525 F.3d at 444. Rather, all of Plaintiffs' fraud-based claims involve "the Pink Energy Group." Again, while Plaintiffs include Waller in their grouping of Defendants as "the Pink Energy Group," this Court does not find that is enough to satisfy Plaintiffs' burden. Accordingly, this Court finds Plaintiffs fail to state valid fraud-based claims against Waller.

### b. Negligent Retention/Hiring and Training Claim

As noted previously, under Ohio law, to establish a negligent hiring and/or retention claim, the plaintiff must demonstrate: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in

25

hiring or retaining the employee as the proximate cause of the plaintiff's injuries. *Plotner v. Swanton Local. Bd. of Educ.*, 85 F. Supp. 2d 747, 755 (N.D. Ohio 2000) (citing Ohio law). Similar with Trivest, Plaintiffs do not allege Waller *himself* hired the sales personnel who went to Plaintiffs homes to sell them the solar panel systems. Rather, Plaintiffs merely group Waller in with "the Pink Energy Group," which this Court has made clear is not enough to satisfy their burden of showing an employment relationship. Accordingly, this Court finds Plaintiffs fail to state a valid claim for negligent retention/hiring and training.

### c. Negligence

Finally, the economic loss rule "generally prevents recovery in tort of damages for purely economic loss." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (citing *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 835 N.E.2d 701, 704 (Ohio 2005)). Similar to Trivest, Plaintiffs do not allege Waller *himself* had any part in the installation of the solar panel systems. Rather, Plaintiffs allege installation crews hired/retained by "the Pink Energy Group" caused damage to Plaintiffs' property. (*Bowe*, ECF No. 1 ¶¶ 66, 207). While Plaintiffs include Waller in its definition of "the Pink Energy Group," this Court again finds Plaintiffs do not plead sufficient facts that Waller himself owed Plaintiffs an independent tort duty or that Waller's negligence itself caused Plaintiffs' property damage. Accordingly, this Court finds the economic loss rule bars Plaintiffs' negligence claim against Waller.

### C. Sunlight's Motions to Compel Arbitration and Dismiss, Cross River's and TCU's Motions for Joinder in Sunlight's Motion, and Plaintiffs' Motions for Discovery

This Court next considers Sunlight's Motions to Compel Arbitration and Dismiss, Cross River's and TCU's Motions for Joinder in Sunlight's Motions to Compel Arbitration and Dismiss, and Plaintiffs' Motions for Discovery.

*1. Sunlight's Bankruptcy Proceedings*

This Court must first address Sunlight's bankruptcy proceedings. On October 30, 2023, Sunlight initiated bankruptcy proceedings. (*Bowe*, ECF No. 39). Section 362(a) of the Bankruptcy Code imposes an "automatic stay," which enjoins, among other things, the continuation of judicial proceedings "against the debtor" that were or could have been commenced before the commencement of the bankruptcy case. *See* 11 U.S.C. § 362(a)(1). Here, since Sunlight is a defendant in these consolidated cases, there is no question that these lawsuits are "against the debtor." The automatic stay applies to Sunlight and, therefore, this Court finds it cannot issue an opinion on Sunlight's Motions to Compel Arbitration and Dismiss at this time. *See Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 63 (6th Cir. 1983) ("This Court must comport to the congressional mandate and honor the automatic stay until such time as the instant proceedings may proceed in a manner consistent with the statutory framework.").

This Court next considers how to proceed with Cross River's and TCU's Motions to Join Sunlight's Motions to Compel Arbitration and Dismiss. The Sixth Circuit has instructed that a district court may "proceed on the merits against the remaining, [nondebtor] codefendants." *Fifth Third Bank v. Dial Props., LLC*, 477 F. App'x 298, 299 (6th Cir. 2012). Additionally, this Court may, at any time, on motion or on its own, drop a party or sever any claim against a party. *See generally* Fed. R. Civ. P. 21. Severing claims "creates two discrete, independent actions, which then proceed as separate suits for the purpose of finality and appealability." *Kitchen v. Heyns*, 802 F.3d 873, 874 (6th Cir. 2015) (internal quotation marks and citation omitted). Essentially, severing claims makes the litigation as though the plaintiff had originally filed two separate lawsuits. *Id*. In contrast, dropping parties requires the court to dismiss the dropped defendants without prejudice, thereby requiring the plaintiff to file a new lawsuit against them on the separate claims. *Id*.

In the interests of judicial economy, this Court finds it prudent to sever the claims against Sunlight from this action, so long as the Court finds Sunlight is not an indispensable party. Rule 19 of the Federal Rules of Civil Procedure establishes a two-step process that guides this Court's determination of whether Sunlight is an indispensable party. *See generally* Fed. R. Civ. P. 19. First, this Court must determine whether Sunlight is a required party. Fed. R. Civ. P. 19(a). A required party is one whom: (1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations. *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 546 (6th Cir. 1994) (discussing Rule 19(a)). If this Court finds Sunlight is a required party, then Rule 19(b) directs this Court to determine whether Sunlight is indispensable. *See generally* Fed. R. Civ. P. 19(b). The issue of indispensability requires this Court to consider whether: (1) a judgment rendered in the party's absence would prejudice the available party; (2) such prejudice could be lessened or avoided; (3) a judgment rendered in the party's absence would be adequate; and (4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder. *Soberay Mach. & Equip. Co. v. MRF. Ltd., Inc.*, 181 F.3d 759, 764 (6th Cir. 1999) (discussing Fed. Rule 19(b)).

This Court finds Defendant Sunlight is not a required party since a resolution of the claims against Sunlight would not resolve Plaintiffs' claims against the other Defendants. Put differently, each of the claims for relief sought by Plaintiffs could be effectively enforced against the other Defendants without the need for Sunlight.[9] Therefore, this Court finds it promotes judicial efficiency to **SEVER** all claims against Defendant Sunlight from these consolidated cases and **STAY** Sunlight's Motions to Compel Arbitration and Dismiss.

---

[9] Sunlight not being a required party is especially true considering Plaintiffs did not sue Pink Energy given that the company had undergone bankruptcy proceedings.

### 2. *Cross River's and TCU's Motions for Joinder in Sunlight's Motions to Compel Arbitration and Dismiss*

This Court next turns to Cross River's and TCU's Motions for Joinder in Sunlight's Motions to Compel Arbitration and Dismiss. Since Cross River and TCU are parties to the same Loan Agreements between Plaintiffs and Sunlight, this Court **GRANTS** Cross River's and TCU's Motions for Joinder in Sunlight's Motions to Compel Arbitration and Dismiss.[10] Accordingly, this Court will address the motions to compel arbitration and dismiss as if Cross River and TCU were standing in Sunlight's shoes.[11]

### 3. *Cross River's and TCU's Motions to Compel Arbitration and Dismiss & Plaintiffs' Motions for Discovery*

In the motions to compel arbitration and dismiss, the parties debate the enforceability of the Arbitration Provision contained in the Loan Agreements that Plaintiffs signed. Cross River/TCU argue that Plaintiffs entered into a valid arbitration agreement and their claims against them are subject to arbitration. Plaintiffs respond that the Arbitration Provision in the Loan Agreement should be voided because it was borne of fraud and is unconscionable.

After filing its response in opposition, Plaintiffs filed motions to conduct limited discovery on whether the arbitration provision at issue is enforceable. This Court will first address Plaintiffs' motions for discovery. Since courts apply the summary judgment standard when ruling on a motion

---

[10] This Court notes that TCU's Motions for Joinder in Sunlight's Motions to Compel Arbitration and Dismiss were not timely filed. Sunlight filed its motions on March 22, 2023. (*Riley*, ECF No. 23). TCU did not file its motions to join until December 20, 2023 (*Riley*, ECF No. 48), *after memoranda in contra* had been filed. Considering, however, that Plaintiffs did not respond to TCU's motions to join and the time to do so has passed, and in the interest of judicial economy, this Court grants TCU's motions to join Sunlight's motions.

[11] Cross River's motions to join Sunlight's motions do not contain any substantive arguments. Rather, Cross River's motions state: "[Cross River] hereby adopts and joins in Sunlight Financial's Motion and consents to the relief requested therein. As a party to the subject Solar Energy System Long-Term Loan Agreement and Promissory Note (the "Loan Agreement"), the arguments and authorities proffered by Sunlight Financial are equally applicable to [Cross River]." (*Bowe*, ECF No. 25 at PageID 353). TCU mainly reiterates what Sunlight argued, namely that Plaintiffs entered into a valid arbitration agreement with TCU and Plaintiffs' claims against TCU fall within the scope of the arbitration agreement. (*Riley*, ECF No. 48 at PageID 596-597).

to compel arbitration, *see Great Earth Cos., Inc.*, 288 F.3d at 889, a party seeking to conduct limited discovery in relation to an arbitration agreement must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position," *AT&T Mobility Services LLC v. Payne*, 2018 WL 476163, at *1 (W.D. Ky. Jan. 18, 2018) (quoting Fed. R. Civ. P. 56(d)). Here, while Plaintiffs provided an affidavit from counsel stating they need depositions of sales personnel and corporate representatives to gather information about Pink Energy's sales practices and training, this Court finds Plaintiffs have not shown why they need such discovery to justify its position. In fact, Plaintiffs responded to Sunlight's motions before filing their motions for discovery, and Plaintiffs detail in their responses in opposition to Sunlight's motions how the sales in these cases were conducted. Accordingly, Plaintiffs' Motions for Discovery is **DENIED**.

Turning to Cross River's and TCU's motions to compel arbitration and dismiss, as previously discussed, the FAA provides that arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Overall, the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citation omitted).

Courts are required to review arbitration agreements pursuant to "ordinary state-law principles that govern the formation of contracts." *Sevier Cty. Schools Fed. Credit Union v. Branch Banking and Trust Co.*, 990 F.3d 470, 475 (6th Cir. 2021) (quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005)). Here, the relevant law is Ohio law. In Ohio and generally, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud and unconscionability. *See Rent-A-Ctr.*, 561 U.S. at 68. For cases where there is a claim of fraud in the inducement of the entire contract, the Supreme Court has stated that the matter is to be

resolved by the arbitrators, not the federal courts. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967). If, however, the claim of fraud goes to the making of the agreement to arbitrate, then a federal court may adjudicate. *Id*. at 403-04.

In this case, the Arbitration Provision (Exhibit A) in the Loan Agreement, provides, in pertinent part:

> **THIS ARBITRATION PROVISION ("PROVISION") MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE MAY HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**
>
> (a) Effect of Provision. Unless prohibited by applicable law, you [Plaintiffs] and we [Cross River/TCU] agree that either party may elect to require arbitration of any Claim under this Provision.
>
> (b) Certain Definitions. As used in this provision, the following terms have the following meanings:
>
> . . .
>
> (ii) "Claim" means any claim, dispute or controversy between you and us . . . that arises from or relates in any way to this Note (including any amendment, modification or extension of this Note), the Contractor Agreement, the work performed by the Contractor or a subcontractor; the System, including maintenance and servicing of the System; the arrangements between and among us, Sunlight and the Contractor; any of our marketing, advertising, solicitations and conduct relating to your request for credit or the System; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief. . . . [E]xcept as set forth in the immediately following sentence, "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Provision or any part thereof (including, without limitation, subsections (f)(iii), (f)(iv) and/or (f)(v) (the "Class Action and Multi-Party Claim Waiver"), the last sentence of subsection (j) and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns

the validity or enforceability of this Note as a whole is for the arbitrator, not
a court, to decide. . . .

. . .

(c) Arbitration Election; Administrator; Arbitration Uses.

(i) If a lawsuit is filed, the Defending Party may elect to demand arbitration
under this Provision of the Claim(s) asserted in the lawsuit . . . A demand
to arbitrate a Claim may be given in papers or motions in a lawsuit. . . .

. . .

(*Bowe*, ECF No. 20-3 at PageID 316-317) (bold and capitalization in the original; underlining

added).[12] Additionally, above Plaintiffs' signature line, the Loan Agreement states:

**BY SIGNING BELOW, YOU AGREE TO THE TERMS OF THIS NOTE,
INCLUDING THE ADDITIONAL TERMS AND CONDITIONS BELOW
AND THE ATTACHED ARBITRATION PROVISION.**

(*Id*. at PageID 307) (bold and capitalization in the original). Finally, below Plaintiffs' signature

line, the Loan Agreement states:

**THE ARBITRATION PROVISION ATTACHED AS EXHIBIT A WILL
HAVE A SUBSTANTIAL IMPACT ON YOUR RIGHTS IN THE EVENT
OF A DISPUTE BETWEEN YOU AND US OR BETWEEN YOU AND
CONTRACTOR. FOR EXAMPLE, WE (OR CONTRACTOR) MAY
REQUIRE YOU TO ARBITRATE ANY CLAIM YOU INITIATE. IF SO,
YOU HAVE NOT HAVE THE RIGHT TO A JURY TRIAL OR THE RIGHT
TO PARTICIPATE IN A CLASS ACTION IN COURT OR IN
ARBITRATION.**

(*Id*.) (bold and capitalization in the original).

As a threshold matter, this Court finds Cross River and TCU properly invoked their rights

to arbitration by filing motions to join Sunlight's motions to compel arbitration. (*See id*. at PageID

316) ("A demand to arbitrate a Claim may be given in papers or motions in a lawsuit."). The

---

[12] The Arbitration Provision is the same in all of the consolidated cases, regardless of whether the agreement was
between Plaintiffs and Sunlight/Cross River or Plaintiffs and Sunlight/TCU.

questions that remain, then, are whether Plaintiffs' claims against Cross River and TCU are subject to arbitration and whether an arbitrator has been legally delegated the authority to make that threshold determination. In this case, the Arbitration Provision specifically states that any disputes about the validity, enforceability, coverage, or scope of the Arbitration Provision are for the court and not the arbitrator to decide, while disputes about the validity or enforceability of the Note (i.e. Loan Agreement) is for the arbitrator and not the court to decide. (*See id*.). Accordingly, this Court finds it has the authority to resolve the parties' disputes surrounding the Arbitration Provision itself, but not the Loan Agreement as a whole. *See Prima Paint Corp.*, 388 U.S. at 404 (holding that federal courts may only consider arguments as to the enforceability of the arbitration provision and not the contract generally).

### a. *Scope of the Arbitration Provision*

This Court will first consider whether Plaintiffs claims fall within the scope of the Arbitration Provision. This Court finds that they do. The Arbitration Provision defines "claim" broadly as, among other things, any claim between Plaintiffs and Cross River/TCU that arises from or relates in any way to the Loan Agreement, work performed by the installation crew, the solar panel system itself, and any marketing relating to the solar panel system. (*Bowe*, ECF No. 20-3 at PageID 316). The Arbitration Provision further states "claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature. (*Id*.). All of Plaintiffs' allegations against Cross River and TCU meet the definition of "claim" within the Arbitration Provision since they all relate to the marketing, sale, purchase, and installation of their solar panel system. Therefore, this Court finds all of Plaintiffs' claims against Cross River and TCU are subject to arbitration.

### b. Unconscionability

Next, this Court considers Plaintiffs' arguments that the Arbitration Provision is unconscionable. Unconscionability encompasses two separate concepts: (1) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., "procedural unconscionability" and (2) unfair and unreasonable contract terms, i.e., "substantive unconscionability." *Eastham v. Chesapeak Appalachia, L.L.C.*, 754 F.3d 356, 365 (6th Cir. 2014) (citing *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 621 N.E.2d 1294, 1299 (1993)) (internal quotation marks omitted).

### (1) Procedural Unconscionability

Ohio courts look to the following when assessing claims of procedural unconscionability:

> factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Cross v. Carnes*, 132 Ohio App. 3d 157, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998). The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print ...?' *Ohio Univ. Bd. of Trs. v. Smith,* 132 Ohio App. 3d 211, 724 N.E.2d 1155, 1161 (1999).

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). The Ohio Supreme Court, however, has found that "the law does not require that each aspect of a contract be explained orally to a party prior to signing." *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 1998-Ohio-612, 692 N.E.2d 574, 578 (Ohio 1998). Additionally, an Ohio Court of Appeals has found that a party cannot avoid enforcement of an arbitration clause because the party failed to read the clause. *See Estate of Brewer v. Dowell & Jones, Inc.*, 2002-Ohio-3440, 2002 WL 1454069, ¶ 13 (Ohio Ct. App. July 3, 2002) ("A party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms."). Further, the Sixth Circuit has exclaimed that "[o]ne who signs a contract

34

is presumed to know its contents, and … if he has had an opportunity to read the contract which he signs he is bound by its provisions." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (quoting *Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952)).

In this case, Plaintiffs argue the Arbitration Provision is procedurally unconscionable because Plaintiffs were rushed to sign it without being told about it.[13] There is no evidence before this Court, though, that Plaintiffs were too young, lacked education, intelligence, and/or business acumen and experience, and/or had such unequal bargaining power as to render the Arbitration Provision procedurally unconscionable. Rather, the evidence shows Plaintiffs voluntarily signed the Loan Agreement immediately below and above acknowledgments stating that they agreed to the Arbitration Provision limiting their ability to litigate any future dispute. Additionally, Plaintiffs voluntarily signed the Arbitration Provision itself, which states, in bold capital letters, that the provision has substantial impacts on their rights in the event of a dispute. While Plaintiffs may have felt they were rushed to sign the agreements because they did not want to miss out on the sales promotions, there is no evidence before this Court that Plaintiffs were not given an opportunity to read the contracts and provisions therein. Accordingly, this Court finds the Arbitration Provision is not procedurally unconscionable.[14]

### (2) Substantive Unconscionability

The focus of substantive unconscionability is on whether terms are fair and reasonable. *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021). Of course, the arbitral forum must allow for "the effective vindication of a plaintiff's statutory claim." *Floss v. Ryan's Family Steak*

---

[13] Plaintiffs also allege the Arbitration Provision is procedurally unconscionable because their signatures and/or initials were auto-filled in. Federal and Ohio law, however, both authorize the use of electronic signatures and deem such signatures binding. *See Bell v. Hollywood Entertainment Corp.*, 2006-Ohio-3974, 2006 WL 2192053, at n.3 (Ohio Ct. App. Aug. 3, 2006).

[14] Because this Court finds the Arbitration Provision is not unconscionable, it does not reach Defendant's estoppel argument.

*Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000). Though, "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the [FAA] will continue to serve both its remedial and deterrent function." *Mitsubishi Motors Corp.*, 473 U.S. at 637.

Here, Plaintiffs argue the Arbitration Provision is substantially unconscionable because it provides for fee-shifting or excess filing costs, it prohibits class action participants or arbitrations, and it substantially restricts discovery. As for fees/costs, the splitting or sharing of the costs of the arbitral forum under a particular arbitration agreement is only substantively unconscionable if it effectively prevents the vindication of a plaintiff's statutory rights. *Morrison*, 317 F.3d at 658. Here, the Arbitration Provision does not shift all costs to Plaintiffs. Rather, it states Defendants will pay any fees required by law, any fees that must be paid in order for the Arbitration Provision to be enforced, and Plaintiffs' attorney's fees and costs if Plaintiffs prevail in arbitration. (*See Bowe*, ECF No. 20-3 at PageID 316-317). Additionally, there is no cost associated with the location of arbitration since the Arbitration Provision states arbitration is to occur where it is reasonably convenient for Plaintiffs. (*See id.*). As for the class action waiver, this Court finds it does not prohibit Plaintiffs from vindicating their claims. *See Price v. Taylor*, 575 F. Supp. 2d 845, 854 (N.D. Ohio 2008) ("An agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies."); *see also AT&T Mobility LLC*, 563 U.S. at 352 (holding the FAA preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts). Finally, contrary to Plaintiffs' assertion, the Arbitration Provision does not severely limit discovery, but rather allows the parties to ask the arbitrator for additional discovery. (*See* ECF No. 20-3 at PageID 317.). Accordingly, this Court finds the Arbitration Provision is not substantively unconscionable.

*c. Dismissal*

Having found that Plaintiffs' claims are subject to arbitration and the Arbitration Provision is not unconscionable, this Court last determines whether it should dismiss the claims against Cross River and TCU as requested or enter a stay of the action. When all claims fall under the scope of an arbitration agreement, the court is to direct the parties to proceed to arbitration and dismiss the claims, without prejudice and subject to reinstatement, if necessary, so no further action is required of the court, except to enter judgment. *See Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 757 (S.D. Ohio 2002). Since this Court found all claims against Cross River and TCU fall under the scope of the arbitration provision, this Court finds it appropriate to dismiss, rather than stay, Plaintiffs' claims against Cross River and TCU. Accordingly, Cross River's and TCU's Motions to Compel Arbitration and Dismiss are **GRANTED.**

## IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendant Trivest Partners, L.P.'s Motions to Dismiss; Defendant Jayson Waller's Motions to Dismiss; and Defendant Cross River Bank's and Defendant Technology Credit Union's Motions for Joinder in Defendant Sunlight Financial, LLC's Motions to Compel Arbitration and Dismiss. Additionally, this Court **SEVERS** all claims against Sunlight Financial, LLC from this action. As a result, this Court **GRANTS IN PART** Defendant Sunlight Financial, LLC's Motions to Compel Arbitration and Dismiss, such that the motions are **GRANTED** as to Defendant Cross River Bank and Defendant Technology Credit Union but **STAYED** Defendant Sunlight Financial, LLC's Motions to Compel Arbitration and Dismiss as to Defendant Sunlight. Finally, this Court **DENIES** Plaintiffs' Motions for Discovery.

Based on this Court's rulings, the claims against Defendants Trivest Partners, L.P. and Jayson Waller are **DISMISSED** in all cases. The claims against Defendant Cross River Bank are **DISMISSED** in *Bowe*, *Evans*, and *Salazar*, and the claims against Defendant Technology Credit Union are dismissed in in *Riley*, *Stenger*, *Chamberlin*, and *Genton*. Plaintiffs are **ORDERED** to submit their claims against Defendant Cross River Bank and Defendant Technology Credit Union to arbitration according to the terms of the Loan Agreements.

      **IT IS SO ORDERED.**

                                 **ALGENON L. MARBLEY**
                                 **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  March 11, 2024**

38